Gilbert, J.
This is, as it seems to me, a plain case, and it probably would not have been presented to the court, but for a misconception on the part of the commissioners of charities, of the relation which they bear to the State commissioner in lunacy. Ho doubt the general management and administration of the asylum, including the selection, appointment and removal of persons employed in carrying on the several departments thereof, has been intrusted to the board composed of said commissioners. But the exercise of their powers is, in a large degree, subject to the supervision and control of the State commissioner in lunacy, and the latter is authorized to require the board to conform in their management of the asylum to such orders and directions, as he may, from time to time, give to them for the purpose of remedying evils, or defects, which have been proved to him to exist in such management, and which are injurious to the lunatics committed to their care. The statute from which the State commissioner in lunacy derives his powers, is broad and comprehensive. It is his duty to examine into the condition of the insane and idiotic in the State, and the management and conduct of the asylums, public and private, and other institutions for their care and treatment, and the officers and others respectively in charge thereof, are required to give to such commissioner at all times, free access to, and full information concerning the insane therein, and their treatment. In all cases, where, from evidence laid before him, there is reason to believe that any person is wrongfully deprived of. his liberty, or is maltreated in any asylum, institution or establishment, public or private, for the custody of the *430 insane, or whenever there is inadequate provision made for théir skillful medical care, proper supervision and safe keeping, he is empowered to institute a formal inquiry, of a judicial nature, into the matter, and for the purposes of such inquest he is authorized to issue process to compel the attendance of witnesses, and the production of papers, and to enforce obedience to such process, and while conducting such inquest, he is invested with the same powers as belong to referees appointed by this court.
The functions of the commissioner in lunacy, in respect to such inquest, are analogous to those of a grand jury. But he is not required to exercise them in all cases. Whére testimony can be obtained voluntarily, it may be' taken by the commissioner in that way, and the formality of an inquest may be dispensed with. The holding of an inquest is only for the purpose of obtaining evidence compulsorily (L. 1874, c. 446, tit. 10, as amended by L. 1876, c. 267).
If either of the above mentioned facts shall be proved to his satisfaction, in either of the modes pointed out, he is further empowered to issue an order in the name of the people of this State, and under his official hand and seal, directed to the superintendent or managers of such institutions, requiring them to modify such treatment or apply such remedy, or both, as shall therein be specified. These extensive and quasi judicial powers have been conferred upon the commissioner in lunacy for the beneficent purpose of protecting a helpless class of citizens against ill usage, and of securing to them the benefits of the care and treatment which the State has immemorially provided for them. The question, “ who shall guard the guardian ? ” is a pertinent one at all times, and especially , to custodians of the insane. I entertain no doubt of the power of the legislature to confer such powers, and I think they should be liberally interpreted in further *431 anee of the object mentioned (People ex rel. New York Inebriate Asylum v. Osborn, 57 Barb. 663).
In the case before me, a reputable citizen of Brooklyn made a deposition voluntarily before Dr. Ordronaux, the State commissioner in lunacy, on the 20th of August last, showing in substance that the commissioners of charities had directed a change to be made in the office of medical superintendent of the insane asylum by the removal of Dr. Parsons without any cause therefor, and the appointment of Dr. Shaw, who had had no special experience in the treatment of the insane. Dr. Ordronaux thereupon issued an order directed to said commissioners, whereby, after reciting the substance of said deposition, that frequent changes in the chief medical officer in asylums for the insane are calculated to impair that skillful medical care and supervision which is derived from long personal acquaintance with, and study of the individual phases of insanity, and that such changes in the Kings county asylum had been frequent, he commanded said commissioners to retain Dr. Parsons, until good and sufficient cause should have been shown to them for his removal. The commissioners made a return to this order, in which they denied the jurisdiction of the State commissioner in lunacy, and also that the removal of Dr. Parsons would have the effect stated in the order, and insisted that the interference of the State commissioners in lunacy with their power to make such removal was an intrusion into the domain of their jurisdiction. I am of opinion that the commissioners were in error on all of the points taken in their return. Dr. Ordronaux acquired jurisdiction to make the order, by virtue of the deposition referred to. That contained facts which tended to show that the commissioners had made inadequate provision for the skillful medical care of the .insane under their charge.
The evidence was competent, and taken in a proper *432 manner. Of its sufficiency Dr. Ordronaux was made by the statute the sole judge in the, first, instance.': Having jurisdiction to make the order, it was the duty of the commissioners of charities to. obey it.. .If they had disobeyed the order it would have been the duty of the court to compel a performance thereof in the summary mode pointed out by the statute, unless they showed sufficient cause why said order should not be performed. . ... ......
I am of opinion, however, that .no. disobedience of the order of Dr. Ordronaux has been shown. The commissioners were required to retain Dr. Parsons only until good and sufficient cause for his removal should have been shown to them. It appeared on this hearing, that the removal of Dr. Parsons was, in fact, made for cause, and, as I-have already, intimated, if such cause had been set forth in .the return of the commissioners of charities to . Dr. Ordronaux’s order, that would have put an end to this proceeding. While I am glad to say that the reasons assigned for the removal of Dr. Parsons do not affect his qualifications as a physician, or as a specialist in the treatment of the insane, yet they must, for obvious.reasons, be. deemed by me good and sufficient. _• It may be a'dded that it was both conceded and proved that Dr. Shaw is in all respects competent for the position of medical superintendent. ; - ; - - . '
The motions arising upon the orders granted by me must, therefore, be denied, and all orders restraining the removal of Dr. Parsons are vacated, without costs.